

1  JOHN F. DeMEO, ESQ. - SBN 28891
   JOSHUA M. WEST, ESQ. - SBN 118463
2  DeMEO DeMEO & WEST
   565 WEST COLLEGE AVENUE
3  SANTA ROSA, CA  95401
   demeo7@sonic.net and demeo3@sonic.net
4  TELEPHONE:  (707) 545-3232
   FACSIMILE:  (707) 545-1725
5
   Attorneys for Plaintiff OSCAR MONROY                    *JCS*
6

7

8                 UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    C  07  3992

11  OSCAR MONROY,                       CASE NO:  _____

12              Plaintiffs,             COMPLAINT FOR DAMAGES FOR
                                        BREACH OF CONTRACT AND FOR
13      vs.                             TORTIOUS BREACH OF THE
                                        INSURANCE CONTRACT, AND FOR
14  LIFE INSURANCE COMPANY OF           DECLARATORY RELIEF AND
    NORTH AMERICA, CIGNA GROUP          DEMAND FOR JURY TRIAL
15  INSURANCE COMPANY, CNA
    INSURANCE COMPANY, DOE ONE,         _____
16  DOE TWO, DOE THREE, DOE FOUR,
    DOE FIVE, DOE SIX, DOE SEVEN, DOE          (UNLIMITED CIVIL)
17  EIGHT, DOE NINE, and DOE TEN,

18              Defendants.
    _____/
19

20

21                    GENERAL ALLEGATIONS

22              COMMON TO ALL CAUSES OF ACTION

23                       JURISDICTION

24      1.  Plaintiff OSCAR MONROY is and at all times was, a resident of the State of

25  California.  This court has subject matter jurisdiction of this action under 28 U.S.C. Section 1332

26  because:

27          a.      There is complete diversity of citizenship between the plaintiff and

28                  defendants in that Plaintiff is an individual who resides in the State of

                                        1
    COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
    INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

1  California and all defendants reside and/or are incorporated outside of the

2  State of California; and,

3          b.      The matter in controversy exceeds the sum of $75,000.00 exclusive of

4  interest and costs.

5      2. At all times herein mentioned, Plaintiff executed a certain agreement entitled

6  "Standard Form of Waiver of Liability by Jockey or Apprentice Jockey." Said Waiver

7  Agreement was entered into and executed by Plaintiff OSCAR MONROY in the State of

8  California. True and correct copies of pages 1 through 17 of an exemplar agreement are attached

9  hereto as Exhibit "A" and made a part hereof by reference.

10      3. At all times herein mentioned, LOS ALAMITOS RACE COURSE was a general

11  partnership and was authorized to transact and was transacting business in the State of California

12  as LOS ALAMITOS RACE COURSE, a horse racing track in Los Alamitos, California; LOS

13  ALAMITOS RACE COURSE operated said race track pursuant to a license issued by the State

14  of California, California Horse Racing Board.

15      4. At all times herein mentioned and in particular on October 18, 2003, Plaintiff OSCAR

16  MONROY was a jockey licensed by the State of California, California Horse Racing Board, to

17  ride and did ride race horses at LOS ALAMITOS RACE COURSE  in official races there

18  including the race in which he sustained serious and permanent injuries resulting in permanent

19  total disability as defined in said Waiver Agreement (Exhibit "A" page 2, Section 1.07 thereof)

20  and the hereinafter described insurance policy.

21      5. As consideration for the issuance of the Waiver Agreement by Plaintiff, LOS

22  ALAMITOS RACE COURSE was required and obligated to acquire a Disability Insurance

23  Policy issued to itself which provided certain mandatory benefits for jockeys, including Plaintiff,

24  all  as described in said Waiver Agreement.  (See Exhibit "A", Article IV, Page 6, 7 and 8

25  thereof, at Section 4.01 thereof).

26      6. At all times herein mentioned, Defendants LIFE INSURANCE COMPANY OF

27  NORTH AMERICA, CIGNA GROUP INSURANCE COMPANY, CNA INSURANCE

28  COMPANY (hereafter INSURER(S)), and DOE ONE through DOE TEN, were corporations,

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

1   limited liability companies or other forms of business entity and were authorized to transact and

2   were transacting the business of insurance in the State of California.

3        7.  The true names or capacities, whether individual, corporate, associate or otherwise, of

4   Defendants, DOE ONE to DOE TEN, are unknown to Plaintiff, who therefore sues said

5   Defendants by such fictitious names, and Plaintiff will amend this complaint to show their true

6   names and capacities when the same have been ascertained.  Plaintiff is informed and believes

7   and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible

8   in some manner for the events and happenings herein referred to, and caused injury and damages

9   proximately thereby to the Plaintiff as herein alleged.

10       8.  At all times herein mentioned, each of the Defendants was the agent and employee of

11  each of the remaining Defendants and was at all times herein mentioned acting within the scope

12  of such agency and employment and each Defendant has authorized, ratified or approved the acts

13  of his/its agents.

14       9.  Defendants INSURER(S), pursuant to agreement with the Thoroughbred Racing

15  Association of North America, Inc., and other race tracks and the Jockey's Guild, Inc., issued an

16  "Accident Insurance Policy" to the Thoroughbred Racing Association of North America, Inc.,

17  and other race tracks and the Jockey's Guild, Inc., as policy shareholders providing for the

18  benefits required by the terms of the Waiver Agreement executed by Plaintiff.  A true and correct

19  copy of the Insurance Agreement issued by Defendant INSURER(S) and DOE ONE to DOE

20  TEN,  which covered and insured Plaintiff, among others, in the event of injuries resulting in

21  permanent total disability, is attached hereto as Exhibit "B", and made a part hereof by reference.

22  The "Eligible Persons" (Insureds) under said policy includes persons in the following class or

23  classes:

24  Class          Description of Class

25  I              All "Jockeys" who prior to the date of the injury have not signed a Standard Form
                   of Waiver of Liability as provided by the Jockeys' Guild, Inc. and; (a) whose injury
26                 occurred at a "Race Track Facility" of a "Racing Association" which has enrolled
                   and paid for coverage under this policy; and (b) who on the date of injury was
27                 injured under a program of Workers Compensation Insurance in a state in which a
                   jockey is conclusively presumed by statue or regulation to be an employee of the
28                 "Owner" or "trainer" who engages him or her or was insured under a standard form

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

of Workers Compensation Insurance Policy and Employers Liability Policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc. or by some other policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc.

II All "Jockeys" who prior to the date of injury have signed a Standard Form of Waiver of Liability as provided by the Jockeys' Guild, Inc. and; (a) whose injury occurred at a "Race Track Facility" of a "Racing Association" which has enrolled and paid for coverage under this policy; and (b) who on the date of injury was insured under a program of Workers Compensation Insurance in a state in which a jockey is conclusively presumed by statute or regulation to be an employee of the "Owner" or "Trainer" who engages him or her or was insured under a standard form of Workers Compensation Insurance Policy and Employers Liability Policy Issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc. or by some other policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc.

10. At all times mentioned herein, Plaintiff, suffered severe and catastrophic injuries resulting in total permanent disability as defined by said policy, and by virtue of the definition of "Eligible Persons" (Insureds), was entitled to all the benefits required by the Waiver Agreement in the event of total permanent disability sustained as a jockey in an official race at, among other tracks, LOS ALAMITOS RACE COURSE, which was a member of the Thoroughbred Racing Association of North America, Inc., and was a "Race Track Facility" of a "Racing Association" which was enrolled and paid for this coverage under said policy.

11. Plaintiff has performed all conditions of the policy on his part to be performed and has met all conditions of the Waiver Agreement and complied with all conditions required by the policy issued by the Defendants INSURER(S), and DOE ONE through DOE TEN, and has given Defendants proper notice and proof of loss.  Said Defendants denied Plaintiff OSCAR MONROY's claim in its entirety on October 30, 2006.  The claims determination was appealed on November 28, 2006, pursuant to the provisions of said policy and said defendants have unduly delayed the determination of the appeal of said denial of benefits and have failed and refused to render a determination of said appeal as required under said policy.

12. At all times herein mentioned, Plaintiff was required to be indemnified by Defendants, and each of them, for the full benefits provided for in the Waiver Agreement and the policy of Accident Insurance issued pursuant to the mandatory provisions of the Waiver Agreement.

4

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

13. On or about October 13, 2003, at LOS ALAMITOS RACE COURSE, in Orange County, California, during a covered and official thoroughbred horse race event then and there operated by LOS ALAMITOS RACE COURSE and Defendant DOE FIVE, Plaintiff, a licensed Jockey, in the course of his employment as such, suffered severe, life-threatening, permanent and totally disabling injuries as defined in the Waiver Agreement (Exhibit "A") and the Policy of Insurance (Exhibit "B") when the horse he was riding stumbled, causing Plaintiff to fall to the track and be struck by and/or trampled by said horse.

14. Plaintiff alleges that at all pertinent times he was and is, permanently and totally disabled within the terms of the Waiver Agreement and the terms of the Policy of Insurance hereinabove referred to, as a direct cause of injury sustained on October 13, 2003, and Defendants have wrongly denied benefits and delayed determination of said appeal and continue to refuse to pay all sums due under said policy namely, $344,600.00, plus interest on said amount. Plaintiff further alleges the timely submission of the underlying proof of loss in that said submission was made as soon as reasonably possible under the terms of the policy. Further, that this action has been filed in a timely fashion notwithstanding paragraph (12) of Section V of said policy which provides in pertinent part that no legal action may be commenced within sixty (60) days of submission of the written proof of loss or after three (3) years from the time written proof of loss is required to be given because of paragraph (18) of said policy which provides that if there is a conflict between the laws in the state where the you (Policyholder, Eligible Person [Insured]) are located, the policy is amended to meet those laws. Specifically, California law affords longer period(s) of limitations and/or different accrual triggers in connection with said claims pursuant to Code of Civil Procedure Sections 337 and/or 343, or other provision of law.

FIRST CAUSE OF ACTION

(BREACH OF CONTRACT)

Plaintiff OSCAR MONROY complains against Defendants LIFE INSURANCE COMPANY OF NORTH AMERICA, CIGNA GROUP INSURANCE COMPANY, CNA INSURANCE COMPANY, DOE ONE through DOE TEN, inclusive, and each of them, and alleges for a First Cause of Action as follows:

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

15.  Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and every paragraph of the general allegations, paragraphs 1 through 14 hereinabove set forth, as though set forth in this cause of action.

16.  Defendants, and each of them, owed a contractual duty to Plaintiff under the Waiver Agreement and Accident Insurance Policy herein referred to, to provide Plaintiff with the full benefits provided for therein.

17.  Defendants, and each of them, breached their contractual duty to provide or to pay to Plaintiff the benefit due under said Waiver Agreement and under the Policy of Accident Insurance.

18.  There is, under the terms of the Waiver Agreement and the Policy of Insurance, now due and owing to Plaintiff from Defendants, and each of them, not less than the sum of $344,600.00.  Plaintiff has demanded payment of this sum, but Defendants have failed and refused, and continue to fail and refuse, to pay that sum or any part of it.

19.  As a proximate result of Defendants' failure and refusal to pay, as herein alleged, Plaintiff has been damaged in the sum of not less than $344,600.00, together with interest thereon at the legal rate from the date payment should have been made under the terms of the Waiver Agreement and the Policy of Accident Insurance until said benefits are paid, and interest on the initial sum of $344,600.00 for Defendants' delay in payment thereof.

SECOND CAUSE OF ACTION

(DECLARATORY RELIEF)

Plaintiff OSCAR MONROY complains against Defendants LIFE INSURANCE COMPANY OF NORTH AMERICA, CIGNA GROUP INSURANCE COMPANY, CNA INSURANCE COMPANY, DOE ONE through DOE TEN, inclusive, and each of them, and alleges for a Second Cause of Action as follows:

20.  Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and every paragraph of the general allegations in paragraphs 1 through 14 hereinabove set forth, as though fully set forth in this cause of action.

/ / /

6

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

1    21. Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and

2 every allegation contained in paragraphs 15 through 19 of the First Cause of Action hereinabove

3 set forth.

4    22. An actual controversy has arisen and now exists between Plaintiff and Defendants

5 concerning their respective rights in that Plaintiff contends that Defendants, and each of them,

6 are obligated to pay to Plaintiff the sum of not less than $344,600.00, plus interest thereon and

7 interest on the delayed payment of the amount admittedly due under the Waiver Agreement and

8 Insurance Policy referred to herein, and Defendants, and each of them, dispute these contentions

9 and claim and contend that no amount due and/or owing to Plaintiff.

10    23. Plaintiff desires a judicial determination of his rights and duties and a declaration as

11 to the rights and duties of Defendants under the Waiver agreement and the Insurance Policy

12 hereinabove referred to.

13    24. A judicial declaration is necessary and appropriate at this time under the

14 circumstances in order that Plaintiff may ascertain his rights and duties and that Defendants may

15 ascertain their rights and duties under the Waiver Agreement and Insurance Policy which are the

16 subjects of the controversy.

17                    THIRD CAUSE OF ACTION

18            (TORTIOUS BREACH OF THE INSURANCE CONTRACT)

19    Plaintiff OSCAR MONROY complains against Defendants LIFE INSURANCE

20 COMPANY OF NORTH AMERICA, CIGNA GROUP INSURANCE COMPANY, CNA

21 INSURANCE COMPANY, DOE ONE through DOE TEN, inclusive, and each of them, and

22 alleges for a Third Cause of Action as follows:

23    25. Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and

24 every paragraph of the general allegations in paragraphs 1 through 14 hereinabove set forth, as

25 though fully set forth in this cause of action.

26    26. Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and

27 every allegation contained in paragraphs 15 through 19 of the First Cause of Action hereinabove

28 set forth.

7

1    27. Plaintiff OSCAR MONROY realleges and incorporates herein by reference each and

2  every allegation contained in paragraphs 20 through 24 of the Second Cause of Action

3  hereinabove set forth.

4    28. Defendants' above-stated representations in its or their policy were false and

5  fraudulent in that Defendants never intended to pay the amount of the accident insurance policy

6  limits where the insured was "legally entitled to recover" that amount from said carriers, but

7  instead had a fixed and firm policy of contesting such claims where it could not negotiate a

8  settlement for a sum of money which was substantially less than the policy benefit. At the time

9  Defendants entered into the insurance contract concerning Plaintiff, Defendants willfully

10  concealed the above facts, all for the purpose of defrauding and deceiving Plaintiff to sign the

11  Waiver Agreement and inducing the track owners and operators to purchase the policy.

12    29. Plaintiff, and others, at the time the representations were made, believed them to be

13  true and, in reliance on them, were induced to, and did, enter into the Waiver Agreement and

14  purchased the insurance contract with Defendants. Had Plaintiff known the true facts, he would

15  not have waived his rights in exchange for the purchase of the policy.

16    30. At all times herein material, Defendants knew that Plaintiff was "legally entitled to

17  recover" as damages from the Defendants the full amount of the disability benefit of $344,600

18  and that said Defendants were obligated to pay Plaintiff the same.

19    31. Notwithstanding Defendants' knowledge of their obligation to pay Plaintiff the full

20  accident insurance benefit, Defendants denied said claim unreasonably and failed to act in good

21  faith by delaying the appeal of said determination and imposing obligations on Plaintiff not

22  authorized under said policy as a condition of determining said appeal, including, but not limited

23  to, demands for a non-physician vocational evaluation.

24    32. As a direct and proximate result of Defendant's wrongful conduct as herein alleged,

25  Plaintiff has been compelled to litigate his claim and in connection therewith to incur attorney's

26  fees and costs in a yet to be finalized and continuing amount but in excess of the jurisdictional

27  minimum of this court. Plaintiff Oscar Monroy's proof of claim and supporting documents were

28  submitted on or about September 15, 2006. Since said date Defendants have unreasonably

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

1  delayed the final evaluation and determination of said claim after having initially denied said

2  claim in writing on October 30, 2006, and have unreasonably delayed the determination of the

3  appeal filed by Plaintiff on November 28, 2006, which to this date has yet to be determined.  Said

4  fees and costs are continuing and Plaintiff prays leave to insert and prove his elements of damage

5  in this respect when the same are finally determined.

6      33.  As a direct and proximate result of Defendants' unreasonable delay in paying the

7  accident insurance policy benefits, Plaintiff has lacked sufficient monies to maintain his

8  household and he and his family have suffered further detriment in an amount in excess of the

9  jurisdictional minimum of this court.

10     34.  As a further direct and proximate result of Defendants' wrongful conduct as herein

11  alleged, Plaintiff sustained emotional and mental distress and anguish, embarrassment,

12  mortification, humiliation, and indignity, all to his general damage in an amount in excess of the

13  jurisdictional minimum of this court.

14     35.  In committing the acts described in this complaint, Defendants have acted in

15  conscious disregard of the rights of Plaintiff and are guilty of malice and/or oppression and/or

16  fraud in that said Defendants have deliberately and intentionally withheld benefits due under said

17  policy to Plaintiff despite knowledge and awareness that said accident insurance benefits were

18  due and owing given the nature and extent of Plaintiff's catastrophic injuries and total permanent

19  disability therefrom all as determined by physicians as defined by said policy. The conduct of

20  Defendants warrants an assessment of punitive damages in an amount appropriate to punish

21  Defendants and deter Defendants and others from engaging in similar wrongful conduct.

22     WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as

23  follows:

24     1.  For the sum of not less than $344,600.00, together with interest thereon at the legal

25  rate for delay in payment on sums heretofore paid or on sums due and payable;

26     2.  For a Declaration of the rights, duties and liabilities of the parties under the Waiver

27  Agreement and Insurance Policy;

28     3.  For general damages according to proof;

9

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

1      4. For punitive and exemplary damages in connection with the Third Cause of Action

2 according to proof;

3      5. For reasonable attorneys' fees according to proof;

4      6. For costs of suit and such other relief as may be proper; and

5 REQUEST FOR JURY TRIAL

6      7. Plaintiff hereby requests by Jury.

7

8 Dated: 7-27 , 2007           DeMeo & DeMeo

9

10           By: _____

11             JOHN F. DeMEO,
            Attorney for Plaintiff,
            OSCAR MONROY

12

13           By: _____

14             JOSHUA M. WEST,
            Attorney for Plaintiff,
            OSCAR MONROY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT AND FOR TORTIOUS BREACH OF THE
INSURANCE CONTRACT, AND FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

THIS IS AN IMPORTANT LEGAL DOCUMENT AFFECTING YOUR PERSONAL RIGHTS. YOU MAY WISH TO CONSULT WITH A LAWYER BEFORE SIGNING IT.

ESTE ES UN DOCUMENTO LEGAL IMPORTANTE QUE AFECTA SUS DERECHOS PERSONALES. USTED PODRÍA CONSULTAR CON UN ABOGADO ANTES DE FIRMARLO.

Standard Form
of
Waiver of Liability
by
Jockey
or
Apprentice Jockey

Forma Estándar
de
Renuncia de Responsabilidad
por
Jockey
o
Aprendiz de Jockey

Version: January 1, 2000

Jockeys' Guild, Inc.
250 West Main Street, Suite 1820
Lexington, Kentucky 40507

White: Original     Yellow: Guild's Copy     Blue: Rider's Copy

**STANDARD FORM OF WAIVER OF LIABILITY**

by

**JOCKEY OR APPRENTICE JOCKEY**

THIS INSTRUMENT made this _____ day of _____,
by the undersigned jockey or apprentice jockey (hereinafter called the "Rider");

W I T N E S S E T H:

WHEREAS, the Rider is a professional athlete, in a hazardous occupation in
one or more states; and

WHEREAS, the Rider may be held to be an independent contractor in some
states and be ineligible for Workers' Compensation; and

WHEREAS, in the absence of Workers' Compensation the Rider or his
family may be unable to recover damages for his injury or death because nobody
was at fault; and

WHEREAS, in some states, the Rider or his family may be unable to recover
damages for his injury or death because, to prove that someone else was at fault,
they must show that the condition which led to such injury or death was
foreseeable and because, if the condition was foreseeable, a professional athlete
may be deemed to have assumed the risk of such injury or death; and

WHEREAS, the Rider wishes to have the assurance that he or his family will
be compensated for his injury or death without lengthy, expensive and
unpredictable legal proceedings; and

WHEREAS, the Rider is willing to waive his right to an uncertain legal
remedy for indemnification by insurance

NOW, THEREFORE, the Rider hereby covenants and agrees as follows:

1

# 1. DEFINITIONS

As used herein:

Section 1.01. *"Guild"* means Jockeys' Guild, Inc., a New York not-for-profit corporation.

Section 1.02. *"Injury"* means bodily injury by accident, or bodily injury by disease, sickness or bacterial infection which occurs as a result of accidental ingestion or pus forming infection, which occur through an accidental cut or wound, when caused or aggravated by the performance of his occupation as a Rider, and shall include bodily injury resulting in death.

Section 1.03. *"Owner"* means any individual, partnership or corporation which owns all or part of a Thoroughbred, Quarter, Appaloosa, Arabian or other like horse.

Section 1.04. *"Race Track Facility"* means the entire premises which are under the control of a Racing Association at the time of an Injury, whether such premises are owned, leased, occupied by permission or used at sufferance by said Racing Association, including all race courses, paddocks, backstretch areas, exercise facilities, training facilities, stables, barns, fields, access roads and other related facilities.

Section 1.05. *"Racing Association"* means any corporation, partnership or other association organized and existing in good standing in the United States for the purpose of conducting races of Thoroughbred, Quarter, Appaloosa, Arabian or other like horses, or any state agency authorized to conduct such races, including those organizations designated as jockey clubs, clubs, state fairs, fairs, agricultural societies or expositions, whether or not the same be organized for profit. The term also includes the officers, directors, trustees, employees, agents, partners and parent entities of any of the foregoing.

Section 1.06. *"Standard Form of Waiver"* means a document in the form of this Instrument (in either the English or Spanish language) or in the form of any predecessor or successor instrument which has been prepared and designated by the Guild as a "Standard Form of Waiver of Liability."

Section 1.07. *"Permanent Total Disability"* means an injury which prevents the insured from being in any occupation for which he/she is qualified based on his/her education, training or experience. The insured must be so disabled and under the care of a physician for twelve straight months from the date the disability began *and* it is medically determined by a physician that the insured is totally disabled and that such status is not medically reversible by current acceptable medical standards.

Section 1.08. *"TRA"* means Thoroughbred Racing Associations of North America, Inc., a New York not-for-profit corporation.

Section 1.09. *"Trainer"* means any individual, partnership or corporation engaged in the business or occupation of training Thoroughbred, Quarter, Appaloosa, Arabian or other like horse, whether as a public trainer, independent contractor or an employee of the Owner of such horse.

Section 1.10. *"Gender"* and *"Number"* The masculine gender shall be deemed to include the feminine and neuter and the singular number shall be deemed to include the plural.

Section 1.11. *"Rider"* means any licensed jockey or apprentice jockey.

## II. SUITS AGAINST OWNERS AND TRAINERS

Section 2.01. *Waiver*. The Rider hereby expressly waives his right, and the right of his legal representatives, to sue,

(a) Any Owner or Trainer by whom the Rider is hired, whether as a common-law employee or as an independent contractor, for damages resulting from Injuries, including those caused by negligence, which arise out of and in the course of his employment by such Owner or Trainer (except as a result of intentional injury) in any forum other than that providing for Workers' Compensation benefits in the state in which the Rider is Injured, and

(b) Any other Owner or Trainer, and any person in the employ of such other Owner or Trainer either as a common-law employee or as an independent contractor, for damages resulting from Injuries, including those caused by

(a) On the ground that such jockey or apprentice jockey was an independent contractor and not a common law employee of such Owner or Trainer at the time of such Injury; and

(b) On any other ground which would be a defense to a claim for Workers' Compensation benefits if the Injury arose at a Race Track Facility while employed by such Trainer.

Section 2.04. *Endorsement Regarding Earnings*. The average weekly wages of a jockey or apprentice jockey must be computed on the basis of all his earnings as a jockey or apprentice jockey, including those derived from anyone from inside or outside of such state.

Section 2.05. *Endorsement Regarding Cancellation*. The Owner or Trainer may be able to cancel the policy only if the Owner or Trainer is no longer licensed in any state.

Section 2.06. *No Offsets*. The benefits payable under the policy and the policy of catastrophic injury insurance described in Part IV shall be in addition to any other insurance benefits.

Section 2.07. *Ineligible States*. The waiver in this Part II shall be void in any state where the Workers' Compensation Board or Commission does not permit the policy or program described in Section 2.02.

## III. SUITS AGAINST RACING ASSOCIATIONS

Section 3.01. *Waiver*. The Rider hereby expressly waives his right and the rights of his dependents, heirs, executors, administrators, assigns and other legal representatives, to sue or make any claim against any Racing Association which owns, leases, operates or otherwise maintains a Race Track Facility for damages resulting from Injuries sustained on the premises of such Facility, including Injuries caused by the active or passive negligence of the Racing Association, condition of premises or any other reason or cause (except as a result of intentional injury) if, but only if, the conditions of Section 3.03 are met.

5

negligence, sustained in his employment by the first Owner or Trainer (except as a result of intentional injury) on a Race Track Facility in any forum whatsoever;

but only if in the case of sub-paragraph (a), such Owner or Trainer or, in the case of sub-paragraph (b), both such Owner or Trainer and such other Owner or Trainer meet the conditions of Section 2.02 at the time such Injury occurs.

Notwithstanding the foregoing, if the Rider believes that his Injuries are due to gross negligence, he may elect to declare the waivers in this Instrument ineffective and sue for damages, in which case he shall not be entitled to the benefits of the insurance provided for under Parts II, III and IV of this Instrument.

Section 2.02. *Consideration for Waiver*. An Owner or Trainer shall be deemed to meet the conditions of this Section only if, as a result of the Injury described in Section 2.01, the Rider is entitled to receive benefits in the state where such Injury occurs, under either:

(a) A program of Workers' Compensation under which a jockey or apprentice jockey is conclusively presumed, by statute, to be the employee of the Owner or Trainer who engages him; or

(b) A Standard Form of Workers' Compensation and Employers Liability Policy issued by an insurance company acceptable to the Guild which contains the described in Sections 2.03 through 2.06 or endorsements which the Guild has acknowledged in writing have substantially the same effect; or

(c) A policy issued by an insurance company acceptable to the Guild under which the insurance company otherwise agrees to pay all claims as if such endorsements were in effect.

Section 2.03. *Endorsement Regarding Employee Status*. The Owner or Trainer must waive in the application for such policy, and the insurance company which issues such policy must waive in the terms of the policy, the right of such Owner or Trainer and such insurance company to defend a claim by a jockey or apprentice jockey, or by any other person claiming damages by reason of the Injury of such jockey or apprentice jockey:

4

(b) The Guild has not represented to such Racing Association that any particular number or proportion of the jockeys or apprentice jockeys utilizing its facilities will execute and file Standard Forms of Waiver.

## IV. CATASTROPHIC INJURY INSURANCE POLICY

Section 4.01. *Benefit.* The policy of catastrophic injury insurance described in Section 3.03(a) must provide a lump-sum benefit in cash in respect of the Injuries sustained on a Race Track Facility of such Racing Association, regardless of the cause of injury, by the jockey or apprentice jockey who has on file with TRA Standard Form of Waiver, in the following circumstances and in at least the following amounts:

(a) *Injuries during 2000:*

*For an injury sustained during 2000 that, within 90 days results in:*

| | |
|---|---|
| Death | $ 998,857 or 10 times his "earnings," whichever is less, with a minimum benefit of $312,141 |
| Quadriplegia | $ 1,248,563 or 10 times his "earnings," whichever is less, with a minimum benefit of $312,141 |
| Paraplegia | $ 998,557 or 10 times his "earnings," whichever is less, with a minimum benefit of $312,141 |
| Permanent Total Disability (but not in death quadriplegia or paraplegia) | $ 747,686 or 10 times his "earnings," whichever is less, with a minimum benefit of $312,141 |

7

Notwithstanding the foregoing and Section 3.02, if the Rider believes that his Injuries are due to gross negligence, he may elect to declare the waivers and assumption of risk in this Instrument ineffective and may sue for damages, in which case he shall not be entitled to the benefits of the insurance provided for under Parts II, III and IV of this Instrument.

Section 3.02. *Assumption of Risk.* The Rider is fully aware of the risks, dangers and hazards inherent in participating in racing events and race-related activities. He voluntarily assumes all risks of damages resulting from Injuries sustained in his capacity as a jockey or apprentice jockey on a Race Track Facility owned, operated, leased or maintained by a Racing Association (except as a result of intentional injury) if, but only if, the conditions of Section 3.03 are met.

Section 3.03. *Consideration for Waiver.* The waiver and assumption of risk described in Sections 3.01 and 3.02 shall only be effective with respect to a claim for damages for Injury if:

(a) The Rider is entitled to receive benefits for his Injury under a policy of catastrophic injury insurance issued to the Guild and meeting the requirements of Part IV hereof, or a separate policy of such insurance issued to the Racing Association by an insurance company acceptable to the Guild and meeting such requirements; and

(b) Such Race Track Facility was either located in a state which required, at the time of such Injury, every Owner and Trainer utilizing such Facilities to be insured under a Workers' Compensation program meeting the conditions of Section 2.02(a) or such Racing Association required, at the time of such Injury, every Owner and Trainer utilizing such Facilities to be insured under a policy meeting the conditions of Section 2.02(b) or (c).

Section 3.04. *No Compulsion.* Each Racing Association shall be required to represent in its application for catastrophic injury insurance that:

(a) Such Racing Association has not required, and will not require, a Standard Form of Waiver, or any other waiver, by a jockey or apprentice jockey as a condition to the utilization of its Race Track Facilities; and

6

Section 4.02. *Children's Benefit.* The policy shall provide that, in the case of the death of the Rider, any benefit payable pursuant to Section 4.01(b) shall be applied first to the cost of a benefit for each child of the insured who, on the date of Injury, has not reached age 21. The benefit of each such child shall be calculated by subtracting the result by $10,000 or such child's age (in full years) on the date of the accident from 21 and multiplying the result by $10,000 or such lesser amount as will leave the Rider's beneficiary with a benefit of at least $100,000.

Section 4.03. *Beneficiary.* The policy shall also provide that, in the case of the death of the Rider, the beneficiary of the benefit described in Section 4.01(b) shall be, subject to Section 4.02, the beneficiary, if any, named by the Rider at the end of this Instrument, if such beneficiary survives the Rider, or if no such beneficiary is named or survives the Rider, the beneficiary otherwise provided for in the policy.

Section 4.04. *Coverage.* The policy shall provide coverage in either of the following ways:

(a) The policy shall insure all jockeys and apprentice jockeys who have on file with TRA a Standard Form of Waiver, regardless of the state in which they primarily ride; or

(b) The policy shall cover all jockeys and apprentice jockeys utilizing the Race Track Facilities of the Racing Association, but shall provide that, if a jockey or apprentice jockey who is injured does not have on file with TRA a Standard Form of Waiver, the benefit set forth in Section 4.01 shall be paid as follows: (i) $100,000 to such jockey or apprentice jockey, or, in the case of his death, to his beneficiary provided for in the policy and (ii) any excess to such Racing Association.

Section 4.05. *Secondary Waiver.* The policy may also provide that the benefits set forth therein shall be payable only if the Rider, or his legal representatives, and any other person otherwise entitled to maintain an action under the laws of the state when the Injury occurs pertaining to wrongful death actions, ratifies the waiver described in Section 3.01 after the injury has occurred and agrees to be bound thereby.

9

For this purpose, "earnings" means the total gross earnings received as a jockey or apprentice jockey in all jurisdictions during the 36 months immediately preceding the Injury, divided by three, provided, however, the individual injured is eligible for insurance coverage by meeting the following definition:

The term "Jockey" means an individual who is duly licensed as a jockey or apprentice jockey by the appropriate authorities in one or more states of the United States and is either: (a) an active member of the Jockey's Guild, Inc.; or (b) is not a member of the Jockey's Guild, but satisfies one of the following conditions:

1. has met the requirements for becoming and remaining an active member of the Jockey's Guild, Inc; or

2. has sustained an injury in an "Official Race", or

3. has ridden (i) in one or more "Official Races" during the seven days immediately prior to an injury or (ii) in five or more "Official Races" in the 60 days immediately prior to an injury; or

4. could not meet the requirement for becoming and remaining an active member of the Jockey's Guild, Inc. because of previous injuries or sickness, but had derived 50% or more of his earned income during any one of the three calendar years immediately prior to such injury from "Earnings" in "Official Races."

(b) *Injuries sustained after 2000:*

For an Injury after 2000, the benefit shall be the same as the benefit for an accident during 2000, adjusted as of January 1, 2001 and each calendar year thereafter in accordance with the most recently published index figure available as of such date (without regard to subsequent corrections in the published index figure) by a percentage equivalent to the percentage change in the Bureau of Labor Statistics Consumer Price Index, U.S. City Average for all Urban Consumers, All Items, using the index for April 2000 as the reference period on which such changes in the index are measured.

8

Section 4.06. *No Offsets.* The benefits payable under the policy of catastrophic injury insurance and the program or policy described in Part II shall be in addition to any other insurance benefits.

## V. MISCELLANEOUS

Section 5.01. *Representations.* The Rider represents that he is a duly licensed jockey, or apprentice jockey and that he is signing this Instrument voluntarily. He acknowledges that no representations have been made to him, either by the Guild or TRA, about the advantages and disadvantages of doing so, about the insurance provided hereunder or about any other matters relating to this Instrument and that he has been advised to consult with his own counsel on these matters.

Section 5.02. *Guild as Agent of Rider.* The Rider is delivering this Instrument to the Guild as his agent. By accepting it, the Guild agrees to act as agent of the Rider, regardless of whether or not the Rider is a member of the Guild, but only as an accommodation to him for the purposes and to the extent provided in Section 5.03. The Rider expressly agrees to hold the Guild, its officers, directors, members, trustees, employees, agents and representatives harmless from any liability whatsoever for any acts or omissions hereunder.

Section 5.03. *Duties of Guild.* The Guild shall inspect this Instrument to insure that it is in the Standard Form of Waiver currently in use and that it has been executed and acknowledged. If so, the Guild shall stamp a copy of this Instrument with its "Received" stamp, return the copy to the Rider and deliver the original to TRA.

Section 5.04. *Effective Date.* This Instrument shall not take effect until it has been delivered by the Guild to TRA and accepted by TRA.

Section 5.05. *TRA as Agent of Those Relying on Waivers.* By accepting this Instrument, TRA agrees to act as agent of the Racing Association, Owners and Trainers relying on it, regardless of whether or not they are members of TRA, but only as an accommodation to them for the purposes and to the extent provided in Section 5.06. Any Racing Association, Owner or Trainer relying on this Instrument shall be deemed to have designated TRA as its agent for such purposes and to such extent, and to have expressly agreed to hold TRA, its officers, directors, members, trustees, employees, agents and representatives harmless from any liability whatsoever for any acts or omissions hereunder.

10

Section 5.06. *Duties of TRA.* By accepting this Instrument, TRA agrees to the following:

(a) To hold this Instrument for the benefit of the Racing Associations, Owners and Trainers relying on it;

(b) Upon written request, to furnish any Racing Association, horsemen's organization or insurance company which is providing (or competing to provide) insurance under Section 2.02 or 3.03, as well as the Guild, with a computer printout or similar schedule, as of the beginning of each calendar year, listing the name of each jockey or apprentice jockey who has a Standard Form of Waiver on file with TRA which is currently in effect, his social security number and such other information as TRA deems appropriate provided, however, that by accepting the same, any such Racing Association agrees to make such printout or schedule available for inspection at any reasonable time by the Owners and Trainers utilizing its Facilities. TRA may charge anyone except the Guild a fee for such a printout or schedule equal to the reasonable cost of preparing and mailing the same;

(c) Upon written or telephone request, to advise any Rider, Racing Association, Owner, Trainer or insurance company providing insurance under Section 2.02 or 3.03, and the Guild, whether or not a Standard Form of Waiver by a particular jockey or apprentice jockey is on file with TRA and is currently in effect and, if so, to furnish such person, at cost, with a certified copy thereof, and;

(d) To permit any Rider, Racing Association, Owner, Trainer or insurance company providing insurance under Section 2.02 or 3.02, or their duly authorized agents, to inspect at any reasonable time the original of any Standard Form of Waiver on file with TRA.

Any Rider, Racing Association, Owner, Trainer, horsemen's organization, insurance company or other person accepting information in writing or by telephone from TRA pursuant to subsections (b) or (c) agrees to hold TRA harmless from any liability for any errors therein.

11

Section 5.07. *Insurance Companies.* For an insurance company to be acceptable to the Guild within the meaning of Section 2.02(b), 2.02(c) and 3.03 (a), such insurance company must among other things, agree with the Guild in writing, directly or by the agent through whom the policy or verification of insurance is to be issued, prior to the issuance thereof:

(a) To make full disclosure to the Guild and TRA, upon request, regarding the ultimate disposition of any portion of the premiums payable under the terms of the policy or verification of insurance, as the case may be, which will not be used for the payment of claims insured thereby, including without limitation the amount, nature and recipient of all agency fees, brokerage commissions, finders fees and other compensation relating to the policy, whether the same is to be paid by such insurance company directly or through an agent, broker or other party, the amount allocated to the administration of claims, the amount paid for reinsurance, the cost of actuarial services, the cost of office administration and so forth;

(b) To submit to the Guild (if it has not already done so), at least 15 days before the policy and verification is issued, a specimen of such policy and verification, and the application therefor, in order that the Guild can satisfy itself that the policy and verification meet the requirements of Section 2.02(b), Section 2.02(c) or Section 3.03(a), as the case may be, and in the case of Section 3.03(a), that the application meets the requirements of Section 3.04;

(c) In the case of insurance of the type described in Section 2.02(b) or (c), to issue policies or verifications of insurance to all Owners and Trainers in the same state who are duly licensed as such in such state upon substantially the same terms and conditions and at substantially the same rates, if proper application is made therefor and the premiums therefor are timely paid;

(d) In the case of insurance of the type described in Section 3.03(a), to issue policies or verifications of insurance to all Racing Associations in the United States which are duly licensed with respect to the Race Track Facilities used by such Racing Association, in the state where such Facilities are located, upon substantially the same terms and conditions and at substantially the same rates, if proper application is made therefor and the premiums therefor are timely paid;

(e) To refrain from canceling the policy or verification of insurance during any calendar year for which the premiums are fixed or determinable, except for fraud, misrepresentation or non-payment of premiums;

(f) In the case of insurance of the type described in Section 2.02(b) or (c), to advise the Guild, upon request, of the names of the Owners and Trainers who will be covered, except for a reason described in subsection (e), by the policy or verification throughout any particular race meeting;

(g) In the case of insurance of the type described in Section 3.03(a), to advise the Guild, upon request, of the names of those Racing Associations which will be covered, except for a reason described in subsection (e), by the policy or verification throughout any particular race meeting;

(h) To provide the Guild and TRA annually, as soon as practicable after the close of each calendar year, with such schedules, tables and charts as are necessary to accurately set forth the allocated and non-allocated loss-adjustment experience and the production costs of the insurance company with respect to the policy during such calendar year, including a breakdown showing the date, time and place of each injury, the nature of the injury and, to the extent possible, the cause of injury, as well as the amount of the claims paid, the anticipated cost of future claims and the type of benefit paid.

The approval of the Guild of an insurance company which has agreed to the foregoing conditions shall not be unreasonably withheld, except that the burden of establishing that an insurance company which is already providing the coverage is not servicing the insurance satisfactorily or that a new insurance company soliciting the business is not "low-balling" its quotation for the business shall be upon the Racing Association seeking to change insurers. Any disclaimer in the policy or verification of insurance to the effect that the insurance company is not bound by the agreements or representations of the agent through whom the policy is issued shall not be binding upon the Guild and, if the insurance company successfully refutes the authority of its agent to have made such representations or entered into such agreement, the agent shall nevertheless remain liable as principal for the damages resulting from any breach thereof.

13

12

of the state where the Injury occurs. In all other matters (including the age at which a contract made during minority may be disaffirmed), it shall be governed by, and construed in accordance with the laws of the State of New York without regard to its rules regarding conflict of laws.

## DESIGNATION OF BENEFICIARY

IN THE EVENT OF MY DEATH, THE BENEFICIARY OF THE BENEFIT UNDER SECTION 4.01(b) OR (e) SHALL BE, SUBJECT TO THE SECTION 4.02, THE FIRST IN ORDER OF THE FOLLOWING PERSONS WHO SURVIVES ME, OR IF NO SUCH PERSON SURVIVES ME OR IS DESIGNATED HEREIN, THE BENEFICIARY OTHERWI(
PROVIDED FOR IN THE POLICY.

[ ] To such of my children as survive me; or

[ ] To the following beneficiary:

Primary:    Name _Maria Murrey_

Relationship _wife_

Address _28966 Longfellow_

_Winchester, Ca 92596_

Secondary:   Name _Eric D. of Concepcion Denise Mur_

Relationship _children_

Address _28966 Longfellow_

_Winchester, Ca 92596_

14

15

## DECLARATION AND SIGNATURE

I HAVE CAREFULLY READ THIS INSTRUMENT AND FULLY UNDERSTAND ITS CONTENTS. I AM AWARE THAT, TO THE EXTENT THAT AN OWNER, TRAINER, OR RACING ASSOCIATION MEETS THE CONDITIONS HEREOF, IT CONSTITUTES A BINDING RELEASE BY ME OF THE LIABILITY OF SUCH OWNER, TRAINER OR RACING ASSOCIATION (AND OF ITS OFFICERS, DIRECTORS, TRUSTEES, EMPLOYEES, AGENTS, PARTNERS AND PARENT ENTITIES, PAST AND PRESENT), AND I AM SIGNING THIS INSTRUMENT OF MY OWN FREE WILL. IF THE COVERAGE TO BE PROVIDED IN ACCORDANCE WITH THIS INSTRUMENT IS NOT PROVIDED OR THIS WAIVER HAS BEEN TERMINATED IN ACCORDANCE WITH ITS TERMS, HOWEVER, I DO NOT AUTHORIZE OR INTEND THIS INSTRUMENT, OR ANY PORTION THEREOF, TO BE USED FOR ANY PURPOSE IN ANY ADMINISTRATIVE OR JUDICIAL PROCEEDING.

_Sta Monica, CA._   _4-16-99_
(City and State)   (Date)

_Oscar Monroe_   _Oscar Monroy_   Wootton  (Signature of Rider)   625M

_OSCAR MONROE_
(Printed Name of Rider)

_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_   _28966 Longfellow Rd_
(Soc. Sec. No. of Rider)   (Address of Rider)

STATE OF                      )
                             : ss.:
COUNTY OF                     )

On the _19th_ day of _April_, 199_9_, before me personally came _OSCAR MONROY_ to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____
(Notary Public)

G. ZUNGA
Commission #1078206
Notary Public — California
Riverside County
My Comm. Expires Nov 29, 1999

16

---

## SIGNATURE OF NATURAL PARENT, ADOPTIVE PARENT OR LEGAL GUARDIAN IF RIDER IS UNDER 18

_____
(Date of Birth of Rider)

_____
(Signature of Parent or Guardian)

_____
(Address of Parent or Guardian)

_____
(Printed Name of Parent or Guardian)

(If Guardian, please indicate how appointed, and attach a true copy of appointment)

STATE OF                      )
                             : ss.:
COUNTY OF                     )

On the _____ day of _____, 199___, before me personally came _____ to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____
(Notary Public)

STATE OF                      )
                             : ss.:
COUNTY OF                     )

**MINORS, PARENTS AND GUARDIANS, PLEASE NOTE SECTION 5.08**

17

# Accident Insurance Policy

## LIFE INSURANCE COMPANY OF NORTH AMERICA

1601 CHESTNUT STREET
PHILADELPHIA, PA 19192
(A STOCK COMPANY OF THE NATIONAL ACCIDENT INSURANCE GROUP)

## Policy Number: SPS925735

We have issued this policy to the Policyholder (referred to as You, Your or Yours) named in item ( ) of Section 1, for the premium paid as shown in item (3) of said section. We will insure persons becoming eligible hereunder (referred to as Insureds) for the conditions and in the manner described in Section II, Coverage.

THIS IS NOT A POLICY OF WORKERS' COMPENSATION INSURANCE. THE POLICYHOLDER DOES NOT BECOME A SUBSCRIBER TO THE WORKERS' COMPENSATION SYSTEM BY PURCHASING THIS POLICY, AND IF THE POLICYHOLDER IS A NON-SUBSCRIBER, THE POLICYHOLDER LOSES THOSE BENEFITS WHICH WOULD OTHERWISE ACCRUE UNDER THE WORKERS' COMPENSATION LAWS.

Benefits will be paid only if an Insured sustains an "injury."

The term "injury" means:
(1)      an accidental bodily injury while this policy is in force; and
(2)      such injury directly and independently causes a loss covered by the policy.

### GUIDE TO THIS POLICY

Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Section I
Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Section II
Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Section III
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Section IV
Other Policy Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Section V

## SCHEDULE

**Section I**

(1)    **POLICYHOLDER**
       Name:   Thoroughbred Racing Associations of North America, Inc., and other Race Tracks, and Jockeys' Guild, Inc.

       Address:      Thoroughbred Racing Associations        Jockeys' Guild, Inc.
                     of North America, Inc.                  250 West Main Street
                     420 Fair Hill Drive, Suite 1            Lexington, Kentucky 40507
                     Elkton, Maryland 21921

(2)    **POLICY PERIOD**
       Effective Date:   January 1, 1998
       Expiration Date:  January 1, 2000

(3)    **PREMIUM**
       Premium for the policy shall be as follows:

                          Catastrophic Injury Insurance

            $550.00 per racing day to be paid by each "Eligible Racing Association".

       Neither the Thoroughbred Racing Association nor Jockeys' Guild, Inc. shall be liable for the payment of any premiums under the policy, but shall have the right to pay any unpaid premium prior to the due date or any extension thereof. However, in no event may such premium be paid after the date of the "Racing Day" for which insurance is to be provided under this policy.

## Section I (Continued)

**(4)**  **ELIGIBLE PERSONS**

Persons in the following Class or Classes are Eligible Persons and shall be Insureds under this Policy:

Class  Description of Class

I  All "Jockeys" who prior to the date of injury have not signed a Standard Form of Waiver of Liability as provided by the Jockeys' Guild, Inc. and: (a) whose injury occurred at a "Race Track Facility" of a "Racing Association" which has enrolled and paid for coverage under this policy; and (b) who on the date of injury was insured under a program of Workers Compensation Insurance in a state in which a jockey is conclusively presumed by statue or regulation to be an employee of the "Owner" or "trainer" who engages him or her or was insured under a standard form of Workers Compensation Insurance Policy and Employers Liability Policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc. or by some other policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc.

II  All "Jockeys" who prior to the date of injury have signed a Standard Form of Waiver of Liability as provided by the Jockeys' Guild, Inc. and: (a) whose injury occurred at a "Race Track Facility" of a "Racing Association" which has enrolled and paid for coverage under this policy; and (b) who on the date of injury was insured under a program of Workers Compensation Insurance in a state in which a jockey is conclusively presumed by statue or regulation to be an employee of the "Owner" or "Trainer" who engages him or her or was insured under a standard form of Workers Compensation Insurance Policy and Employers Liability Policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc. or by some other policy issued by an Insurance Company which is acceptable to the Jockeys' Guild, Inc.

## DEFINITIONS

The term "Jockey" means an individual who is duly licensed as a jockey or apprentice jockey by the appropriate authorities in one or more states of the United States and is either: (a) an active member of Jockeys' Guild, Inc.; or (b) is not a member of Jockeys' Guild, Inc. but satisfies one of the following conditions:

1.  has met the requirements for becoming and remaining an active member of Jockeys' Guild, Inc.; or
2.  has sustained an injury in an "Official Race"; or
3.  has ridden (i) in one or more "Official Races" during the seven days immediately prior to an injury or (ii) in five or more "Official Races" in the 60 days immediately prior to an injury; or
4.  could not meet the requirements for becoming and remaining an active member of Jockeys' Guild, Inc. because of previous injuries or sickness, but had derived 50% or more of his earned income during any one of the three calendar years immediately prior to such injury from "Earnings" in "Official Races".

The term "Policyholder" also means an "Eligible Racing Association" which is named on a Certificate of Insurance and has paid the required premium.

The term "Eligible Racing Association" means a "Racing Association" which has been licensed or authorized to conduct racing on one or more "Racing Days" by the appropriate authorities in the state where such races are to be conducted.

The term "Racing Association" means any corporation or association organized and existing in good standing in the United States for the purpose of conducting flat or steeplechase races of thoroughbred, quarter, Appaloosa, Arabian or other like horses or any state agency authorized to conduct such races, including those organizations designated jockey clubs, clubs, state fairs, fairs, agricultural societies, or expositions, whether or not the same be organized for profit.

The term "Race Track Facility" means the entire premises designated on a Certificate of Insurance and under the control of a "Racing Association" at the time of covered injury, whether such premises are owned, leased, occupied by permission, or used at sufferance by said "Racing Association", including all race courses, paddocks, backstretch areas, exercise facilities, stables, barns, fields, access roads and other related facilities.

07/07/2006  15:48    41248    '16              CIGNA AD&D TEA          PAGE   04/18

## Section I (Continued)

The term "Earnings" means the total gross earnings received by an Insured as a jockey in all jurisdictions during the 36 months immediately preceding the date of the covered injury divided by three. In the event gross earnings do not exist for the entire preceding 36 months, earnings means the amount determined by taking the total gross earnings received divided by the actual number of months of gross earnings and multiplying the result by 12.

The term "Official Race" means a race of thoroughbred, quarter, Appaloosa, Arabian or other like horses conducted either inside or outside the United States upon which pari-mutuel wagering was permitted with the approval of the authority governing the conduct of such races.

The term "Owner" means any individual, partnership, or corporation which owns all or part of a thoroughbred, quarter, Appaloosa, Arabian or other like horse.

The term "Trainer" means any individual, partnership, or corporation engaged in the business or occupation of training thoroughbred, quarter, Appaloosa, Arabian or other like horses, whether as a public trainer, independent contractor, or an employee of the owner of such horse.

(5) **COVERAGE BY CLASS**
Coverage for each Class of Insureds is described in Section II under the Coverage Code(s) shown below for such Class:

| Class | Coverage Code | Type of Coverage |
|-------|---------------|------------------|
| I & II | C-BFA | WHILE ON POLICYHOLDER PREMISES |

If two or more Coverage Codes apply to an Insured due to an injury that happened in one accident we will pay Benefits as though only one Coverage Code applied. We will pay the largest Benefit payable.

(6) **BENEFITS BY CLASS**
Benefits for each Class of Insureds are described in Section III under the Benefits Code(s) shown below for such Class:

| Class | Benefits Code | Type of Benefits | Maximum Amount of Benefits |
|-------|---------------|------------------|----------------------------|
| I | B-AA | Loss of Life (Principal Sum) | $100,000.00 |
| I | B-AF | Plegia (Principal Sum) | $100,000.00 |
| I | B-JF | Permanent Total Disability (Principal Sum) | $100,000.00 |
| II | B-AA | Loss of Life | Ten times the Insured's "Earnings" (Principal Sum) subject to a minimum of $291,951.00 and a maximum of $934,249.00. |
| II | B-AF | Plegia (Principal Sum) | Ten times the Insured's "Earnings" subject to a minimum of $291,951.00 and a maximum of $1,167,804.00 for Quadriplegia and a maximum of $934,249.00 for Paraplegia. |
| II | B-JF | Permanent Total Disability (Principal Sum) | Ten times the Insured's "Earnings" minimum of $291,951.00 and a maximum of $699,325.00 |

The term "Earnings" means the total gross earnings received by an Insured as a jockey in all jurisdictions during the 36 months immediately preceding the date of the covered injury divided by three. In the event gross earnings do not exist for the entire preceding 36 months, earnings means the amount determined by taking the total gross earnings received divided by the actual number of months of gross earnings and multiplying the result by 12.

## Section I (Continued)

(7) **AGGREGATE LIMIT**
The Aggregate Limit as defined in Section III of the Policy is: not applicable.

(8) **BENEFICIARY RECORDS**
You will be the holder of the beneficiary records.

## WITH RESPECT TO CLASS I

Benefits for loss, if any, as respects Accidental Death only shall be payable to the beneficiary or beneficiaries as designated in writing and on file with you.  If no beneficiary designation has been made, benefits will be payable in the following order of preference:

(1)    to the Insured's spouse, if living, otherwise
(2)    equally to the Insured's lawful children, if living, otherwise
(3)    equally to the Insured's mother and father, if living, otherwise
(4)    the Estate of the Insured

## WITH RESPECT TO CLASS II

Regardless of whether or not a beneficiary has been designated, any Accidental Death benefit payable shall be applied first to the cost of a benefit for each child of the Insured who, on the date of injury, had not reached age 21. The benefit of each such child shall be calculated by subtracting the child's age (in full years) on the date of the accident from 21 and multiplying the result by $10,000.00 or such lesser amount as will leave the Insured's beneficiary with a benefit of at least $100,000.00. If no beneficiary designation has been made benefits will be payable in the following order of preference:

(1)    to the Insured's spouse, if living, otherwise
(2)    equally to the Insured's lawful children, if living, otherwise
(3)    equally to the Insured's mother and father, if living, otherwise
(4)    the Estate of the Insured

This section supersedes item (12) Section V with respect to Accidental Death claims only.

(9) **AIRCRAFT OWNED OR OPERATED BY YOU**
Not Applicable

(10) **RATE AND CONTRACT GUARANTEE**
During the policy term shown in item (2), this policy may not be canceled as shown in item (7) of Section V. The policy may only be canceled by a written agreement between you and us.  No amendments to item (3) of Section I of this policy may be made during the term shown in item (2) without a written agreement between you and us.

07/37/2006  15:48   41240   ‘S                CIGNA AD&D TEAI                  PAGE  06/10

## Section II - Code C-BFA

### COVERAGE
### WHILE ON POLICYHOLDER PREMISES

This Coverage applies only to those Insureds who are in a Class to which such Coverage applies as shown in item (5) of Section 1.

### DESCRIPTION OF COVERAGE

Subject to all other terms of the policy we will cover Injury to the Insured only while on the premises of a "Race Track Facility" during a "Covered Event" and arising in the course of his or her employment as a licensed "Jockey".

We will not cover injury arising out of special events, entertainments, demonstrations, and exhibitions not otherwise related to the "Covered Event" unless we specifically agree in writing to such activities.

### DEFINITIONS

"Race Track Facility" means the entire premises designated on a Certificate of Insurance and under the control of a "Racing Association" at the time of covered injury, whether such premises are owned, leased, occupied by permission, or used at sufferance by said "Racing Association", including all race courses, paddocks, backstretch areas, exercise facilities, stables, barns, field, access roads and other related facilities.

"Covered Event" means "Meets" including "Racing Days", "Dark Days", and "Stabling and Training Days" for which an insurance premium has been paid in accordance with and subject to the terms of the policy.

"Meet(s)" means a period of time during which a series of "Racing Days" selected and/or scheduled by the state's governing racing commission and You may be held.

"Racing Days" means a date during a "Meet" on which flat or steeplechase racing is permitted on the "Race Track Facility".

"Dark Days" means those days during a "Meet" when no flat or steeplechase racing is conducted.

"Stabling and Training Days" means days not within the "Meet" during which the "Race Track Facilities" of the "Racing Association" are open for stabling, training and other non-"Racing Day" purposes.

## Section III  Code B-AA

### BENEFITS
### PRINCIPAL SUM
### (LOSS OF LIFE)

These Benefits apply only to those Insureds who are in a Class to which such Benefits apply as shown in item (6) of Section 1.

### DESCRIPTION OF BENEFITS

If the Insured's Injury results in a loss shown below within one year after the accident causing the loss, we will pay for:

Loss of Life............................................................................................................The Principal Sum

**Section III-Code B-AF**

### BENEFITS
### PRINCIPAL SUM
### (PLEGIA)

These Benefits apply only to those Insureds who are in a Class to which such Benefits apply as shown in item (6) of Section I.

## DESCRIPTION OF BENEFITS

If the Insured's Injury results in a loss shown below within one year after the accident causing the loss, we will pay for:

Quadriplegia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum
Paraplegia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum

### DEFINITIONS

Paraplegia means the "total paralysis" of both upper or lower limbs. Quadriplegia means the "total paralysis" of both upper and lower limbs.

The term "total paralysis" means an injury to the Spinal Cord of an Insured. The Insured must be paralyzed and under care of a physician for twelve straight months from the date the paralysis began. At the end of this time it must be medically determined that the paralysis is total and not currently reversible.

If the Insured suffers more than one Principal Sum loss from any one accident, we will pay only one amount, the largest.

**Section III-Code B-JF**

### BENEFITS
### PRINCIPAL SUM
### (PERMANENT TOTAL DISABILITY)

These Benefits apply only to those Insureds who are in a Class to which such Benefits apply as shown in item (6) of Section I.

### DESCRIPTION OF BENEFITS

If the Insured's injuries results in a loss shown below which commences within ninety days after the accident causing the loss, we will pay for:

Permanent Total Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . The Principal Sum

### DEFINITION

"Permanent Total Disability" means an injury which prevents the insured from being in any occupation for which he/she is qualified based on his/her education, training or experience. The insured must be so disabled and under the care of a physician for twelve straight months from the date the disability began and it is medically determined by a physician that the insured is totally disabled and that such status is not medically reversible by current acceptable medical standards.

If the Insured suffers more than one Principal Sum loss from any one accident, we will pay only one amount, the largest.

Section III-Code B-JF (Continued)

## EXPOSURE AND DISAPPEARANCE

We will pay the appropriate Benefit if the Insured:
(1)     is exposed to the elements due to an accident covered by the policy; and
(2)     sustains a loss for which a Benefit would otherwise be paid under the policy.

We will presume death due to an injury to the Insured if:

(1)     the Insured's body is not found within one year from the date of an aircraft accident in which he or she was a passenger; and
(2)     if the aircraft accident is covered by the policy.

## AGGREGATE LIMIT

The most we will pay for all losses due to one accident is the amount shown in item (7) of Section I.

The Aggregate Limit may not be enough to pay the full Principal Sum Benefit to which each Insured who suffers a loss is entitled. In this event, the Benefit payable to each Insured will be reduced in equal proportion. The proportion will be determined by dividing the Aggregate Limit by the total of all the Principal Sum Benefits payable without such limit.

## Section IV                    EXCLUSIONS

We will not pay for any loss as a result of:

(1)     suicide, while sane or insane; or intentional self-inflicted injury;
        Note: If you reside in Missouri the words "or insane" do not apply.

(2)     sickness, disease or bacterial infection of any kind, except:
        (a)     those which occur as a result of accidental ingestion; or
        (b)     infections which occur through an accidental cut or wound;

(3)     the Insured being legally intoxicated as defined by the laws of the state or governing territory in which the loss occurs; or

(4)     the Insured being under the influence of any narcotic drug that is not lawfully available unless taken on the advice of a physician, other than for drug addiction.

## Section V                OTHER POLICY PROVISIONS

(1)     **THE CONTRACT:** This policy, and all endorsements and any attached papers make up the entire contract. Any change to this policy or waiver of its provisions must be approved by our officer. This approval must be noted on or attached to this policy. No agent may change or waive any provision in this policy.

(2)     **POLICY PERIOD:** The policy takes effect on the effective date shown in item (2) of Section I. It will become effective at 12:01 a.m. standard time at your address shown in item (1) of Section I. This policy will continue in force until the expiration date shown in item (2) of Section I. The policy may also be terminated in accordance with item (7) of this section.

(3)     **PREMIUM:** Premiums due for the policy shall be remitted to us as shown in item (3) of Section I.

(4)     **EXAMINATION AND AUDIT:** We have the right to examine your records relating to this policy. We may do this at any time during the policy term. We may also do this within three years after the policy ends.

## Section V (Continued)

**(5)**  **POLICY TERMINATION:** You may cancel this policy at any time after the first premium term by giving us written notice in advance of such cancellation. The effective date of termination will be the date we receive such notice, or a later date if shown in the notice. We may not cancel this policy before the first anniversary date of the policy except for non-payment of premium. After this date, we may cancel this policy at any time by sending a written notice to you at the address shown in our records. The effective date of termination will be at least 30 days later than the date of our written notice.

Any premium owed to us, in the event of you or us canceling, must be promptly paid. If you cancel, we will refund the unearned premium, if any, based on the normal short rate procedures. If we cancel, we will refund the unearned premium, if any, on a pro rata basis.

**(6)**  **NOTICE OF CLAIM:** Written notice of claim must be given to us within 20 days after a covered loss occurs or begins. If such notice cannot be given during such time, then it must be done as soon as reasonably possible. The notice must include your name, the Insured's name and policy number. It should be sent to us in care of: **Health Special Risk, HSR Plaza, 4001 N. Josey Lane, Carrollton, TX 75007,** or to one of our agents.

**(7)**  **CLAIM FORMS:** When we receive written notice of claim, we will send the claimant forms for filing proof of loss within 15 days. If we don't, written proof of loss will be met by the Insured or beneficiary by sending us written proof as described below.

**(8)**  **WRITTEN PROOF OF LOSS:** Proof of loss must describe the incident, extent and the type of loss. For death claims, proof of loss means certified copies of the death certificate, autopsy if performed, Coroner, Medical Examiner or Justice of the Peace reports. Police Motor Vehicle Accident Report or Police Incident Report, if applicable, are also proof of loss documents.

Written proof of loss must be sent to us at the address shown above, or to one of our agents. If the claim is for a continuing loss for which we make periodic payments, the claimant must give us written proof of loss within 90 days after the end of the period that benefits are payable.

For any other loss, written proof must be given to us within 90 days after the date of loss. If proof of loss cannot be given in that time, such proof of loss must be given as soon as reasonably possible. Except in the absence of legal capacity, the claimant must give written proof within one year of the time otherwise required.

**(9)**  **TIME OF PAYMENT OF CLAIMS:** We will pay any benefits due once we receive written proof of loss. Benefits that provide for periodic payment will be paid weekly.

**(10)**  **PAYMENT OF CLAIMS:** We will pay death benefits to the beneficiary designated by the Insured and on file with the holder of beneficiary records. If a beneficiary has not been designated, death benefits will be paid to the estate of the Insured. All other benefits will be paid to the Insured except for medical benefits (if applicable). At your request these may be paid directly to the provider of medical services. Any payments we make in good faith will end our liability to the extent of the payment.

**(11)**  **PHYSICAL EXAMINATION AND AUTOPSY:** We have the right to have the Insured examined by a physician of our choice. This may be done as often as reasonably necessary while a claim is pending or while we are paying benefits. We may also have an autopsy made unless the law forbids it. We will pay the cost of both the exam and autopsy.

**(12)**  **LEGAL ACTIONS:** No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by the policy. No such action may be brought after 3 years from the time written proof of loss is required to be given.

**(13)**  **BENEFICIARY DESIGNATION AND CHANGE:** The Insured may choose one or more beneficiaries. We will furnish forms for this use. Such forms shall be filed with the holder of the beneficiary records as shown in item (8) of Section I. The Insured may change beneficiaries at any time. The beneficiary's consent is not required unless an irrevocable beneficiary has been named. The change will be effective only upon receipt by the holder and it will take effect on the date the Insured signs it. Any payment made by us in good faith prior to our receipt of any beneficiary change will end our liability to the extent of such payment.

## Section V (Continued)

(14)   **ASSIGNMENT:** An Insured may assign his or her interest under this policy. In the case of an irrevocable beneficiary, that person must give written consent. No assignment will be binding on us unless it is in writing and a copy sent to us. We accept no responsibility for the validity of an assignment.

(15)   **CERTIFICATE OF INSURANCE:** We shall provide you with certificates to give to each Insured where required by law. The certificate will describe the Insured's coverage and state to whom we will pay benefits. The certificate is not a part of the policy.

(16)   **POLICYHOLDER'S RECORDS:** You will keep records of the insurance on each Insured including persons who have canceled.

(17)   **WORKERS' COMPENSATION:** This policy is not a substitute for the Workers' Compensation Law requirement.

(18)   **CONFORMITY WITH STATE STATUTES:** Any provision of this policy which, on its effective date, is in conflict with the laws of the state where you are located, is amended to meet those laws. This policy is to be governed by Maryland law and jurisdiction lies in the Maryland courts.

Signed by us as of the policy effective date.

Corporate Secretary

President and
Chief Executive Officer